UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BRAND, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) No. 12 CV 1122 |
| Plaintiff, | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| COMCAST CORPORATION and, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | ) ) ) ) September 26, 2012 |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff James Brand is employed by Comcast Corporation and Comcast Cable Communications Management, LLC ("Comcast") as a line technician.[1] He has sued Comcast under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, *et seq.*,[2] and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, alleging that it failed to compensate him for work performed prior to and after his scheduled shift and during his lunch break and for time spent while on-call. In his Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b), Brand seeks to pursue his FLSA claims as a collective action. For the following reasons, Brand's motion is granted in part and denied in part.

---

[1] Harold Gunn, Kevin Jackson, Marvin Cooper, Barry Farmer, and Mark Graham filed consents to opt-in as plaintiffs in this case. (R. 10, 23, 30-1, 49.)

[2] Comcast has moved to dismiss Brand's claim under the IWPCA. (R. 45, 52.)

## Background

Comcast provides cable products and services to customers in the State of Illinois. It employs 358 line technicians who work in 33 different locations. (R. 42-1, Pierce Decl. ¶¶ 2-4.) The job of these line technicians includes making service calls, maintaining node health, repairing outages, conducting signal testing, and troubleshooting other system issues. According to Brand, Comcast employs a "home dispatch" system that permits line technicians to park their work vehicles at their homes, allowing them to drive from home to their first job site. Comcast refers to this practice as "home-garaging." Line technicians typically begin their day by logging onto Comcast's "Watch Tower" program via their company-issued laptop computers to check their routes and receive job assignments, allowing them to arrive at their first job assignment on time. Before leaving their houses, line technicians must load their laptops and meters onto their work vehicles, conduct a mandatory inspection of their vehicles, and complete vehicle inspection paperwork. Brand alleges that because Comcast requires line technicians to be onsite at their first scheduled job no later than 30 minutes following the start of a scheduled shift, they must perform any pre-shift work more than an hour before their shift begins.

During the day, Comcast requires line technicians to take a one-hour unpaid meal break. During that break, Brand claims that he customarily performs work-related activities and was expected to do so. At the end of their shifts, line technicians must unload their laptops and meters from their work vehicles. Brand asserts that he also regularly performed work from home off-the-clock, including responding to emails, completing paperwork, and

monitoring the status of unfinished jobs. He further claims that every five weeks, he is required to be "on-call" for one week. Being "on-call" means that line technicians are scheduled to work from 3:00 p.m. to midnight and then be available from midnight to 7:00 a.m. Brand says that his activities and movement are restricted when he is on-call. Line technicians must be available to respond to reported outages in their service areas within ten minutes of receiving a service call and resolve the issue within three hours. While on-call, line technicians must stay with their vehicles at all times, may not allow non-Comcast employees into their vehicles, and must remain in close proximity to their service areas.

Brand's FLSA claims are based on his assertions that Comcast requires line technicians to perform work before and after their scheduled shifts and during their lunch breaks while also being "on-call" one week out of every five, all without proper compensation. According to Brand, although line technicians are scheduled to work nine hours per day, five days per week, the pre- and post-shift work and the work performed during the unpaid lunch break result in them working in excess of 40 hours per week.

Brand seeks certification of a collective action under the FLSA so that he may represent other line technicians who allegedly were also denied compensation. He believes that there are at least 50 line technicians who have been subjected to the same allegedly unlawful compensation practices. In each of their declarations, Brand and the opt-in plaintiffs assert that, "[f]or the past ten years, I have worked with approximately 18-30 other [l]ine [t]echnicians at any given time. Like me, these other [l]ine [t]echnicians perform the same duties, are required to comply with the same directives, and are subjected to the same

pay plans. Moreover, these line technicians are subject to the same time keeping practices and lack thereof." (R. 30-2, Brand's Decl. ¶ 13; Jackson's Decl. ¶ 14; Farmer's Decl. ¶ 13; Gunn's Decl. ¶ 10; Cooper's Decl. ¶ 14.) Accordingly, Brand asks this court to authorize the mailing of a proposed notice of this lawsuit to "[a]ll individuals who were employed, or are currently employed, by one or more of the [d]efendants, its subsidiaries or affiliated companies, as line technicians or any other similarly titled position at any time during the relevant statute of limitations period." (R. 37, Compl. ¶ 19.) The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

**Analysis**

The FLSA provides that "employers must pay overtime to employees working on an hourly basis." *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005). If an employee works more than 40 hours per week, he must receive at least one-and-a-half times his regular wage for every extra hour worked. *See* 29 U.S.C. § 207(a)(1). Section 216(b) of the FLSA allows employees to pursue their FLSA claims through a collective action against an employer to recover unpaid overtime compensation on behalf of themselves and "other similarly situated" employees. *Id.* § 216(b); *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Although a collective action is similar to a class action authorized by Federal Rule of Civil Procedure 23, "[t]he principle difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez*, 605 F.3d at 448. Potential members of a

4

collective action who do not opt in are not bound by the court's decision. *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 847 (N.D. Ill. 2008).

Neither the FLSA nor the Seventh Circuit has specified how collective actions are to proceed. *Id.* Management of these actions has thus been left to the discretion of the district courts. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *see also Alvarez*, 605 F.3d at 449 ("A district court has wide discretion to manage collective actions."). In determining whether an FLSA claim should proceed as a collective action, the court applies a two-step process.[3] *See Rottman v. Old Second Bancorp, Inc.*, 735 F.Supp.2d 988, 990 (N.D. Ill. 2010). The process begins with the plaintiff demonstrating that there are similarly situated employees who are potential claimants. *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008). In deciding whether potential class members are similarly situated, the court applies a "lenient interpretation" of the term. *Jirak*, 566 F.Supp.2d at 848. At the first stage, the plaintiff must make a "modest factual showing

---

[3] Comcast suggests that instead of applying the traditional two-step process, the court should apply the Rule 23 certification standard applied in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), or alternatively, apply a more stringent "second-stage" standard. (R. 41, Defs.' Resp. at 9 n.2.) The court declines to adopt either. This court, and other courts in this district, have typically applied the standard two-step process in determining whether an FLSA case should proceed as a collective action. *See, e.g.*, *Blakes v. Illinois Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, at *2 (N.D. Ill. June 15, 2011); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 755-56 (N.D. Ill. 2011) (rejecting request to apply *Wal-Mart*'s Rule 23 analysis to FLSA collective action); *Smallwood v. Illinois Bell Tel. Co.*, 710 F.Supp.2d 746, 750 (N.D. Ill. 2010); *Anyere v. Wells Fargo Co.*, No. 09 C 2769, 2010 WL 1542180, at *1 (N.D. Ill. Apr. 12, 2010); *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008); *Jirak*, 566 F.Supp.2d at 847-48 (collecting cases); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Anyere v. Wells Fargo, Co., Inc.*, No. 09 C 2769, 2010 WL 1542180, at *1 (N.D. Ill. Apr. 12, 2010) (internal quotation marks omitted). If the plaintiff makes this "modest" showing, the court may conditionally certify the class and permit the sending of notice to the similarly situated employees, who then have the opportunity to opt in as plaintiffs. *See Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 779 (N.D. Ill. 2007). At the second stage, the defendant may request that the court re-evaluate the conditional certification based on additional evidence acquired through discovery. *Id.* If the court determines that there is insufficient similarity to allow the named and opt-in plaintiffs to proceed with their claims on a collective action basis, the court may revoke the conditional certification. *Id.*

Comcast objects to issuing judicially supervised notice on several grounds. Its main argument against certification is that Brand has not shown that he is similarly situated to other potential class members. Pointing to inconsistencies among the declarations Brand provided, Comcast contends that Brand has failed to present sufficient evidence demonstrating an unlawful common policy or plan applied to all line technicians across Illinois. Because the only policies in place are lawful ones, Comcast argues that any deviations from those policies necessarily involve individual case-specific inquiries, making collective treatment inappropriate. Comcast further claims that Brand and the opt-in plaintiffs are not similarly situated to other line technicians because several of them maintain in a separate lawsuit—alleging racial discrimination against Comcast—that they are treated

6

differently from line technicians outside of the facility at 721 East 112th Street, Chicago, Illinois ("112th facility") where they work.[4] Alternatively, Comcast suggests that even if conditional certification is allowed, the court should limit the approval of notice to line technicians who have worked at the same facility as Brand and the opt-in plaintiffs. Finally, the parties disagree over the logistics and wording of Brand's proposed notice.

After reviewing the declarations provided by Brand and Comcast, *see Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009), the court finds that under the lenient review which the allegations are afforded at this stage, Brand has made the modest showing of similarity required to justify sending judicial notice of this lawsuit to other line technicians at the 112th facility. The court also finds, however, that Brand has failed to make a similar showing regarding any unlawful common policy or plan at Comcast's other Illinois facilities.

Comcast begins its challenge against certification with Brand's allegations regarding pre- and post-shift work. Pointing to Brand's and the opt-in plaintiffs' declarations, Comcast argues that they complain of different conduct, which precludes a finding of sufficient similarity. Relying on the declarations of 19 non-plaintiff technicians, Comcast then argues that Brand's and the opt-in plaintiffs' allegations are inconsistent with the declarations of other line technicians, none of whom claim any pre-shift, post-shift, lunch break, or

---

[4] On November 28, 2011, 12 plaintiffs, including Brand and opt-in plaintiffs Gunn, Jackson, Cooper, filed a class action against Comcast alleging that Comcast has and is engaged in a pattern of race discrimination against African American employees at its 112th facility. *Brand v. Comcast Corp., Inc.*, No. 11 CV 8471 (N.D. Ill.).

7

restrictive on-call work. Although not all of the opt-in plaintiffs claim pre-shift and post-shift overtime—opt-in plaintiff Farmer asserts that he had to perform post-shift work such as unloading his laptop and meter from his vehicle but alleges that he performed no work from home, and opt-in plaintiff Gunn asserts no pre-shift or post-shift work at all—all the other opt-in plaintiffs claim pre- and post-shift, lunch break, and restrictive on-call work meriting overtime pay. (R. 30-2, Brand's Decl. ¶¶ 6-10; Jackson's Decl. ¶¶ 6-11; Farmer's Decl. ¶¶ 6-10; Gunn's Decl. ¶¶ 6-7; Cooper's Decl. ¶ 6-11.) Moreover, although none of the declarations Comcast has provided point to uncompensated overtime in any of Brand's identified overtime categories, a review of these declarations demonstrates that none of these technicians work or have worked at the 112th facility where Brand and the opt-in plaintiffs work. Those declarations therefore do not speak to whether there was an unwritten policy resulting in line technicians working off-the-clock during the identified times. Accordingly, Brand has submitted adequate evidence to meet his modest burden at this first stage and to justify issuing notice of the FLSA claims to line technicians at the 112th facility. *See Anyere*, 2010 WL 1542180, at *3-4; *Russell*, 575 F.Supp.2d at 937; *see also Blakes*, 2011 WL 2446598, at *3-4, 7 (conditionally certifying similar lunch break and post-shift work claims).

Comcast contends nevertheless that the only common policy in existence is a lawful one, which requires reporting all time worked and prohibiting off-the-clock work. Any deviations from that policy, Comcast claims, necessarily involve case-specific and individualized inquiries, making a collective action inefficient and unmanageable. This is so, according to Comcast, because the court must determine for each line technician, for each

8

work week whether: (1) the individual technician actually performed any activities off-the-clock; (2) the activity performed was compensable work or non-compensable preliminary and postliminary work; (3) the off-the-clock work performed required overtime pay under the FLSA; (4) Comcast management knew or should have known that the individual performed unpaid work; and (5) the activities performed during the lunch break and while on-call constituted working time under the FLSA. Moreover, Comcast asserts that line technicians exercise discretion over when to break for lunch and what jobs to assign themselves. Accordingly, Comcast reasons that a case-by-case inquiry into how each class member exercised his or her discretion on a work day would be necessary.

Three responses. First, as Brand points out, he is not arguing that Comcast's official documented policies are unlawful. Rather, he asserts that Comcast has an unwritten policy where line technicians must perform work before and after their scheduled shifts and during their lunch breaks, all without proper compensation. Collective actions have been certified in this district in these circumstances. *See, e.g., Anyere*, 2010 WL 1542180, at *3-4; *Russell*, 575 F.Supp.2d at 935; *Madden v. Corinthian Colleges, Inc.*, No. 08 C 6623, 2009 WL 4757269, at *2 (N.D. Ill. Dec. 8, 2009) (collecting cases).

Second, evidence of lawful written policies prohibiting off-the-clock work or compensating for overtime work does not defeat an allegation of an unlawfully implemented common policy or practice under the FLSA where regardless of the official rules a plaintiff presents "countervailing evidence of a common policy of not paying for overtime." *Russell*,

9

575 F.Supp.2d at 935 (citing *Burch v. Qwest Comms. Intern., Inc.,* 500 F.Supp.2d 1181, 1188 (D. Minn. 2007)). Here, Brand has presented sufficient evidence for the present purposes to warrant conditional certification, despite Comcast's invocation of its lawful policy.

Finally, despite individualized questions and circumstances, conditional certification may be appropriate if common questions predominate. *See Alvarez*, 605 F.3d at 459 ("If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions."); *Russell v. Illinois Bell Tel. Co.*, 721 F.Supp.2d 804, 812-13 (N.D. Ill. 2010) (finding even at second-stage review, collective action treatment was appropriate and common questions regarding employer policies dominated despite allegations that some, but not all of opt-in plaintiffs claimed to have performed work during lunch break); *Jirak*, 566 F.Supp.2d at 850 ("The mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class.").

At this stage, the court is tasked with determining whether it can "envision a scenario" where Brand and potential collective action members are similarly situated. *Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005). Accordingly, Comcast's argument about dissimilarities in the class is more appropriate at the second stage when it will be better known who will make up the class and after discovery has fleshed out certain factual issues. *See Jirak*, 566 F.Supp.2d at 850. Here, Brand has submitted more than bare allegations that Comcast has violated the FLSA by failing to compensate for overtime work. Brand has alleged (and the supporting affidavits confirm, at
10

least preliminarily) that he and other similarly situated line technicians at the 112th facility were expected to perform additional work before and after their shifts began and ended—logging onto their computers and checking their routes and job assignments, loading and unloading their computers and meters onto and off their work vehicles, conducting mandatory inspections of their vehicles, and completing vehicle inspection paperwork—during their unpaid lunch breaks—completing jobs, driving to jobs, and responding to emails, phone calls, and text messages from the dispatch center and Comcast supervisors—and while on-call, none of which garnered overtime compensation. The evidence Brand has submitted is sufficient to meet his modest burden at this stage for present purposes.

That plaintiff's FLSA claims may later require a more individualized inquiry does not preclude authorizing notice of their claims at this first stage. *See Heckler*, 502 F.Supp.2d at 780-81 ("The Court cannot say at this stage that allowing other employees to opt in would cause individual issues to predominate in a way that would render a collective action inappropriate. The mere potential that such a situation may develop is not, at this stage, a bar to conditional certification."); *Gambo*, 2005 WL 3542485, at *6. While it is possible that after notice has been issued and discovery conducted a collection active will be revealed to be unmanageable, such a possibility does not mean that notice may not issue at step one. *See Gambo*, 2005 WL 3542485, at *5 ("Perhaps the investigation and analysis required to determine whether particular opt-ins are similarly situated, so as to fairly proceed to judgment in a collective action, ultimately will prove to be sufficiently unwieldy or

cumbersome that a collective action will not be appropriate in some or any form. But that does not, under relevant caselaw, mean that notice may not fairly issue under the more lenient step one FLSA analysis.") (internal citation omitted); *Persin*, 2005 WL 3159684, at *4 ("Because we rely on the two-step method . . . which provides for a detailed, post-discovery inquiry into the veracity of the allegations that all putative claimants are similarly situated, it is inappropriate to decline to authorize notice now based on the possibility of a fact-intensive inquiry at the second stage.").

Comcast further contends that the differences in the types of jobs held by line technicians prevents a finding of sufficient similarity.[5] But employees need not be in the "same identical job or situation" for conditional certification to proceed so long as they were victims of a common policy or plan that violated the law. *See, e.g.*, *Vennet v. American Intercontinental Univ. Online*, No. 05 C 4889, 2005 WL 6215171, at *1 (N.D. Ill. Dec. 22, 2005); *Gambo*, 2005 WL 3542485, at *7. And the court has concluded that at least preliminarily, Brand has presented sufficient evidence of such a practice at the 112th facility.

Comcast next points to the inconsistent positions taken by the plaintiffs in *Brand v. Comcast Corporation*, No. 11 CV 8471 (N.D. Ill.), the currently pending employment discrimination case involving some of the same plaintiffs who are parties to this FLSA

---

[5] Pointing to the distinctive collective bargaining agreements governing employment terms and conditions at the Cortland, Oswego, and Carol Stream facilities, Comcast argues that collective action is inappropriate for this additional reason. In light of the court's conclusion that notice should be limited to the 112th facility, the court need not address this argument for that facility is not governed by a collective bargaining agreement.

12

action, to argue that Brand and the opt-in plaintiffs are not similarly situated to other line technicians. Comcast contends that the plaintiffs' argument in that case—they allege that Comcast racially discriminated against employees at the 112th facility—precludes a finding at this first stage that Brand and other potential plaintiffs were victims of an unlawful common policy or plan under the FLSA. As Brand argues, to the extent that this other federal action requires the court to make a determination about the credibility of Brand's and opt-in plaintiff's assertions in this FLSA action, such determinations is not appropriate at this first stage for accurate credibility assessments are difficult to make without the benefit of full discovery. *See Anyere*, 2010 WL 1542180, at *3; *Russell*, 575 F.Supp.2d at 935 n.3. In any event, the court does not see the relevance of the other lawsuit to the issues presented in this case. The question in this case is whether Comcast violated the FLSA by not providing overtime pay to its workers, and the question more specifically now is whether Brand has provided sufficient evidence that he and other similarly situated employees were victims of a common practice or plan by Comcast to deprive them of their overtime pay. The merits of the other lawsuit—which remains pending—are irrelevant to the current issues.

As for Brand's allegations regarding restrictive on-call work, Comcast says that the work he alleges that line technicians perform while on-call is not work that is entitled to compensation under the FLSA. This question, however, speaks to the merits of his FLSA claims rather than the appropriateness of conditional certification. The only question at this stage is whether Brand has made a sufficient showing demonstrating that he and other similarly situated employees were victims of a common policy or plan that violated the

13

FLSA. The question of whether Comcast violated the FLSA with its on-call policy at the 112th facility is a question for another day. *See Russell*, 575 F.Supp.2d at 935 (finding that determination of merits at conditional certification stage is premature); *cf. Russell*, 721 F.Supp.2d at 815 ("Determination of whether plaintiffs have shown that Illinois Bell actually violated the FLSA is beyond the scope of a motion for decertification and is therefore discouraged.") (citing *Doornbos v. Pilot Travel Centers LLC*, No. 04-44, 2005 WL 6166032, at *6 (S.D. Cal. Apr. 27, 2005) ("A determination of whether [defendant's] policy violated the law . . . is not an issue properly considered on a motion to decertify.")); *Brennan v. Qwest Comms. Int'l, Inc.*, No. 07-2024, 2009 WL 1586721, at *5 (D.Minn. June 4, 2009) ("The more fundamental problem with [defendant's] arguments . . . is that they are directed to the ultimate merits of Plaintiff's unpaid overtime claims . . . . The central question at issue in the decertification motion is whether the named plaintiffs and opt-in plaintiffs are similarly situated, not whether the FLSA was violated.")). In sum, the court is persuaded that Brand has made the required "modest factual showing" that he is similarly situated to potential plaintiffs concerning an unwritten common policy requiring him to perform pre- and post-shift work, work during his lunch break, and work while on-call, and that he did not receive overtime compensation for doing so.

Alternatively, Comcast contends that if conditional certification is allowed, notice should be limited to line technicians who work or have worked at the same 112th facility as Brand and the opt-in plaintiffs. Based on the declarations submitted, the court agrees. While the declarations submitted by Brand—when considered along with Comcast's

14

declarations—are sufficient to establish the modest showing of similarity required to demonstrate an unwritten common policy of uncompensated work at the 112th facility, he has failed to present adequate evidence of such a policy at any of Comcast's other locations. With the exception of Brand who for a recent period worked "modified duties and/or at a help desk" at Comcast's North Avenue Chicago facility (R. 42-1, Pierce Decl. ¶ 6), he and the opt-in plaintiffs all worked at the 112th facility. None of their declarations contains any information regarding the practices at other locations and whether at those locations, line technicians were forced to perform uncompensated work pre-shift, post-shift, during their lunch breaks, or while on-call. Indeed, an examination of the declarations of other Comcast line technicians from other facilities would, at least preliminarily, cast doubt on the existence of such an unwritten policy at those particular locations.

Brand contends that the collective action should not be limited to the 112th facility, but should include all of Comcast's Illinois locations. This is so, according to Brand, because regardless of identical job title and location, line technicians are non-exempt employees, paid at an hourly rate, perform similar job duties, work nine hours per day, and are subject to the same company-wide policies. This is possible. But at this point, Brand has failed to provide adequate evidence corroborating any assertion that line technicians at Comcast's other locations are similarly situated to Brand and opt-in plaintiffs at the 112th facility. Their declarations allege that they have worked with approximately 18 to 30 other line technicians who all performed the same duties and were subject to the same practices. (R. 30-2, Brand's Decl. ¶ 13; Jackson's Decl. ¶ 14; Farmer's Decl. ¶ 13; Gunn's Decl. ¶ 10;

Cooper's Decl. ¶ 14.) But these declarations do not specify if these other line technicians presently work or have worked at the same 112th facility or a different one. The court sees no other evidence in Brand's and the opt-in plaintiffs' declarations justifying issuing notice to other Comcast locations.

Accordingly, because at this time there exists no modest factual showing that Brand and the opt-in plaintiffs are similarly situated to line technicians at Comcast's other locations, notice of the lawsuit must be limited solely to the location where they worked. *See Berry v. Quick Test, Inc.*, No. 11 C 4435, 2012 WL 1133803, at *5-7 (N.D. Ill. Apr. 4, 2012) (declining to certify nationwide class where plaintiffs failed to show that employees working at other offices were victims of common policy or plan); *Babych v. Psychiatric Solutions, Inc.*, No. 09 C 8000, 2011 WL 5507374, at *5 (N.D. Ill. Nov. 9, 2011) (refusing to authorize notice to employees at other facilities where plaintiff worked at one location and declaration contained no information regarding practices at other facilities); *Collazo v. Forefront Educ., Inc.*, No. 08 CV 5987, 2010 WL 335327, at *2-3 (N.D. Ill. Jan. 28, 2010) (declining to certify class that included employees at defendant's Florida offices based only on copies of web pages that provided job descriptions of similar positions); *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *4 (N.D. Ill. Dec. 9, 2009) (declining to certify nationwide class where plaintiff provided no affidavits attesting to nationwide policy); *Molina v. First Line Solutions LLC*, 566 F.Supp.2d 770, 788-89 (N.D. Ill. 2007) (limiting notice to Chicago territory where named plaintiffs had only worked in that territory).

The parties next dispute the logistics of issuing notice and the wording of that notice. Comcast objects to Brand's requests for the phone numbers, social security numbers, and email addresses of potential plaintiffs. Comcast also requests that to protect the privacy of potential class members, a third-party administrator should administer notice and that an opt-in deadline of 60 days, instead of 90, be imposed. Comcast finally objects to certain statements in Brand's proposed notice, providing its own proposed notice with suggested revisions. Brand suggests in response an opt-in period of 75 days; that a claims administrator of his choice send notice; and that in exchange for last known telephone and social security numbers, he would accept email addresses. Brand also requests seven days for the parties to meet and confer to iron out the contested language in the dual notices.

The parties are given seven days to meet and confer. The court, however, issues the following guidelines regarding the aforementioned disputes. First, the court rejects Comcast's request for a third-party administrator. Courts in this district have routinely rejected such a request for a protective order may alleviate any privacy concerns raised by giving potential class members' contact information to Brand's counsel. *See e.g.*, *Anyere*, 2010 WL 1542180, at *4; *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554-55 (N.D. Ill. 2008).

The court likewise rejects Brand's requests for potential plaintiffs' phone numbers, social security numbers, and email addresses. To be sure, Brand is entitled to discover potential plaintiffs' names and addresses, *see Hoffman*, 493 U.S. at 169-70, but disclosure of personal data like social security numbers "is not to be done lightly," *Vennet v. American*

17

*Intercontinental University Online*, No. 05 C 4889, 2006 WL 908030, at *3 (N.D. Ill. Apr. 5, 2006). While email addresses and phone numbers are not as sensitive as social security numbers, the court finds that this information is not critical to issuing notification of this lawsuit. Accordingly, the court would require Comcast to turn over only the names and addresses of potential class members, *see Howard*, 2009 WL 140126, at *9, and if the notices are returned as undeliverable, individual phone numbers may be requested, as needed, subject to production under a protective order limiting the use of that information to tracking purposes. *See Vennet*, 2006 WL 908030, at *3 (stating that "people who appear to have no or little interest in joining the lawsuit" should not "be faced with the possibility of being contacted by telephone or having additional personal information requested").

The parties also disagree over the length of the opt-in period deadline. Brand requests a 90-day deadline or 75 as a compromise, and Comcast requests a 60-day deadline. The court believes that a 60-day period is a reasonable span of time to give potential plaintiffs sufficient notice of this lawsuit. *See Nehmelman*, 822 F.Supp.2d at 765 (concluding 60-day period was reasonable given "relatively small number of potential class members"); *Smallwood*, 710 F.Supp.2d at 753 (noting 60-day opt-in period "provide[d] ample opportunity for prospective class members to opt-in"); *Shiner*, 2009 WL 4884166, at *5 (allowing for 60-day opt-in period). The court also suggests that the parties identify a specific date on the notice as the opt-in deadline so as to prevent confusion.

With these guidelines in mind, the court finds that the best course is to allow Brand's counsel and defense counsel to meet and confer to devise a fair and accurate notice that is

acceptable to both sides. The parties are given seven days to meet and confer regarding the outstanding differences between the two proposed notices. Once an agreed-upon proposed notice has been reached, the parties shall submit that revised notice for this court to review.

## Conclusion

For the foregoing reasons, Plaintiff's Motion in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b) is granted in part and denied in part. It is granted to the extent that Brand is authorized to send notice, with the modifications described above, to the identified class of potential plaintiffs who works or has worked at the 112th facility within the time frame specified by the proposed notice. It is denied to the extent that Brand requests notice be sent to employees at other Comcast facilities. The parties are given seven days to meet and confer regarding the outstanding differences in language between the two proposed notices. Once the parties have arrived at an agreed-upon proposed notice, they shall submit that proposed notice for this court's review.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge