UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BRAND, individually, and on behalf of all others similarly situated, | ) ) ) ) | No. 12 CV 1122 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | April 11, 2013 |

**MEMORANDUM OPINION and ORDER**

Plaintiff James Brand, a line technician at Defendant Comcast Corporation ("Comcast"), brings this purported collective and class action lawsuit, alleging that Comcast denied Brand certain overtime payments in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq*. Comcast seeks to dismiss the IWPCA claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted:

**Background**

Brand filed his original three-count complaint against Comcast on February 16, 2012. (R. 1.) Four months later Comcast moved for judgment on the pleadings

with respect to the IWPCA claim, arguing that Brand failed "to sufficiently plead th[e] requisite 'employment contract or agreement' to state an IWPCA claim." (R. 33, Mot. ¶ 3.) Comcast withdrew its motion pursuant to an agreement between the parties, and Brand subsequently filed an amended complaint on July 3, 2012. (R. 36; R. 37.) Shortly thereafter, Comcast moved to dismiss the IWPCA claim in Brand's amended complaint. (R. 44.)

On November 19, 2012, this court entered a Memorandum Opinion and Order granting Comcast's motion to dismiss Brand's IWPCA claim without prejudice. (R. 63.) This court held that Comcast's employee handbook did not form the basis of an employment agreement actionable under the IWPCA because it includes an express disclaimer clarifying that the handbook's provisions have no binding effect. (Id. at 7.) This court further held that even if the disclaimer were overlooked, the handbook did nothing more than memorialize Comcast's preexisting legal obligations under state and federal wage laws. (Id. at 6.) This court granted the motion without prejudice and permitted Brand to file a second amended complaint identifying any alternate bases for the IWPCA claim. (Id. at 9.)

On December 7, 2012, Brand filed his second amended complaint. (R. 66.) This version of the complaint provides a list of places in which Brand alleges Comcast agreed to pay him an hourly rate for all time worked and overtime pay for work in excess of 40 hours per week, including: (1) oral statements made by Comcast's managers and supervisors that Brand and class members would be paid

2

for all time worked including overtime pay; (2) Comcast's employee handbooks, which state that "[o]vertime compensation will be paid to employees in non-exempt positions at a rate of one and one-half (1.5) of the hourly rate for all hours worked over forty (40) hours during the workweek"; (3) Comcast's "Timekeeping Pay Process," stating that "[o]vertime compensation will be paid to non-exempt employees at a rate of one and one-half (1.5) the regular rate for all hours worked over forty (40) hours during the workweek"; (4) Comcast's November 2008 timekeeping system announcement, stating that "[o]vertime will not be calculated based on a normal 40-hour work week"; and (5) Comcast's 2011 and 2012 training programs, which stated that "Comcast will pay for all the time you work . . . without exception. If you work overtime, you will usually be paid one and a half times your normal rate[.]" (Id. ¶ 11.) In the second amended complaint's text relating specifically to Brand's IWPCA claim, he alleges that the "agreement is memorialized in Defendants' handbooks amongst other things." (Id. ¶ 51.)

## Analysis

In the current motion, Comcast again argues that Brand's IWPCA claim should be dismissed because, according to it, Brand has failed to plausibly identify any agreement that can support his IWPCA claim. To survive dismissal under Rule 12(b)(6), a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although

detailed factual allegations are not necessary to meet those requirements, a plaintiff must do more than present "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). In ruling on a motion to dismiss, this court accepts as true all well-pleaded facts in Brand's second amended complaint and draws all inferences in favor of Brand. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

The question presented by Comcast's motion is whether Brand's allusion in the second amended complaint to an agreement represented by the employee handbook, oral statements, and miscellaneous company documents is sufficient to raise above the speculative level his claim that Comcast violated the IWPCA by breaching an agreement regarding his and the potential class members' wages. As explained in this court's earlier opinion, the IWPCA requires every employer, "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS § 115/3. Under the IWPCA, wages are defined as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS § 115/2 (emphasis added). Therefore, to state a claim under the IWPCA, Brand must allege that Comcast owed him the unpaid wages pursuant to an employment contract or

4

agreement. *See Landers-Scelfo v. Corporate Office Sys., Inc.*, 356 Ill.App.3d 1060, 1067 (2d Dist. 2005).

The IWPCA's emphasis on a separate agreement as the basis for an unpaid wage claim stems from its primary objective, which is to ensure that employees receive all earned benefits upon leaving the employer. *Kim v. Citigroup, Inc.*, 368 Ill.App.3d 298, 306 (1st Dist. 2006). In keeping with that goal, the IWPCA provides employees "with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Soh v. Target Mktg. Sys., Inc.*, 353 Ill.App.3d 126, 129 (1st Dist. 2004) (quotation omitted). Thus claims for compensation under the IWPCA are "akin to breach of contract actions," *id.*, allowing an employee claiming that promised wages have been withheld to require "that the employer honor his contract," *National Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986).

In moving to dismiss the second amended complaint, Comcast argues that Brand's IWPCA claim merely repackages Brand's already-pleaded FLSA and IMWL claims for alleged unpaid overtime compensation into an IWPCA claim, without identifying an agreement that can support a separate IWPCA claim. (R. 70, Defs.' Mem. at 6.) It argues that Brand tacked the claim onto the complaint in order to take advantage of the IWPCA's statute of limitations—10 years compared to the IMWL's and FLSA's 3 years. (Id.) Additionally, Comcast contends that the disclaimers within the employee handbook prevent it from forming the basis for an

agreement, and that given this court's previous decision, any holding to the contrary violates the law of the case doctrine. (Id. at 7-9.) In opposition to the motion, Brand relies heavily on *Wharton v. Comcast Corp.*, __ F.Supp.2d __, 2012 WL 6055594 (N.D. Ill. Dec. 6, 2012)—an opinion issued after this court granted Comcast's motion to dismiss the first amended complaint—to support his argument that provisions within Comcast's employee handbook and other materials describing Comcast's overtime compensation policy constitute an employment agreement actionable under the IWPCA. (R. 74, Pl.'s Resp. at 7.)

In its previous opinion regarding Brand's IWPCA claim, this court concluded that Brand cannot rely on Comcast's employee handbook—which includes an express provision disclaiming that the handbook is binding on Comcast in any way—as the "agreement" supporting his IWPCA claim. (R. 63, Mem. Op. & Order at 4-6.) In so concluding, this court joined what is the majority view among the decisions addressing this issue in the district. *See Camilotes v. Resurrection Health Care Corp.*, No. 10 CV 366, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012); *Harris v. Seyfarth Shaw LLP*, No. 09 CV 3795, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010); *Martino v. MCI Communc'ns Servs., Inc.*, No. 08 CV 4811, 2008 WL 4976213, at *9 (N.D. Ill. Nov. 20, 2008); *Skelton v. Am. Intercont'l Univ. Online*, 382 F.Supp.2d 1068, 1075 (N.D. Ill. 2005); *Paulitz v. City of Naperville*, No. 89 CV 8855, 1991 WL 33658, at *3 (N.D. Ill. Mar. 8, 1991). These decisions hold that express disclaimers within employee handbooks negate a finding of mutual assent, which is

6

a prerequisite to the formation of an agreement actionable under the IWPCA. *See, e.g.*, *Camilotes*, 2012 WL 2905528, at *6 (holding that human resources policy could not support IWPCA claim where policy disclaimed creating an employment contract and allowed defendant to add, delete, or deviate from the policy's provisions); *Martino*, 2008 WL 4976213, at *9 (finding that the "IWPCA claim must fail because the Compensation Plan's disclaimers . . . are fatal to [the plaintiff's] claims that the Compensation Plan was an agreement or contract under the IWPCA"); *Skelton*, 382 F.Supp.2d at 1075 (granting summary judgment against plaintiffs where IWPCA claim relied on employee handbook that included a disclaimer).

Two weeks after this court issued its previous opinion, the *Wharton* decision tackled a similar motion in another case against Comcast involving what appears to be the same handbooks that are at issue here. 2012 WL 6055594, at *2. The *Wharton* decision adopted the minority view. *Id.* It emphasized the distinction between an "agreement" and a "contract" in finding that the disclaimer does not stand as a barrier to Comcast's handbook forming the basis of an IWPCA claim. *Id.* at *3. The court relied on the *Restatement (Second) of Contracts* definition of an agreement as "'a manifestation of mutual assent on the part of two or more persons,'" and recognized that an agreement only requires "mutual assent to terms." *Id.* (quoting *Restatement (Second) of Contracts* § 3). The court reasoned that it is irrelevant that the disclaimers prevent the creation of a "promise" and purport to be "guidelines" giving Comcast the right to change the terms in the handbooks at any

7

time, because Comcast assented to the terms in the handbooks so long as the handbooks were in effect. *Id.* The court ultimately denied Comcast's motion to dismiss the plaintiff's IWPCA claim in *Wharton*, holding that statements in the handbooks demonstrated mutual assent to the terms of an employment agreement. *Id.* at *4–*5.

In his response to Comcast's current motion to dismiss, Brand argues that this court should reconsider its previous ruling in light of the *Wharton* decision and adopt the view that the handbook's provisions represent an employment "agreement" sufficient to state a claim under the IWPCA. (R. 74, Pl.'s Resp. at 7.) Relying heavily on the law of the case doctrine, Comcast urges this court to follow its previous ruling that the handbooks do not give rise to an IWPCA agreement. (R. 70, Defs.' Mem. at 7-8.) The doctrine of the law of the case establishes a presumption that a court will adhere to a ruling it made at one stage of a lawsuit for the duration of the suit. *Avitia v. Metropolitan Club of Chi.*, 49 F.3d 1219, 1227 (7th Cir. 1995). But the doctrine does not represent a "straitjacket." *Id.* "A judge may reexamine his earlier ruling . . . if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it." *Id.* But when it comes to interlocutory orders, such as motions to dismiss, "district courts have the discretion to reconsider their decisions at any time." *In re: Soybean Futures Litig.*, 892 F.Supp. 1025, 1042

8

(N.D. Ill. 1995). Despite that general liberty, this court is not inclined to deviate from its original decision for the reasons that follow.

First, this court remains unconvinced that Comcast's employee handbook can support an IWPCA claim. Under Illinois law "an employee handbook . . . creates enforceable contractual rights if the traditional requirements for contract formation [offer, acceptance, and consideration] are present." *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 484, 490 (1987). There does not appear to be any dispute in this case that the disclaimer stating that Comcast's employee handbook is not "an express or implied contract" defeats any argument that the handbook forms the basis of a contract under the IWPCA. *See Hanna v. Marshall Field & Co.*, 279 Ill.App.3d 784, 790 (1st Dist. 1996); *Skelton*, 382 F.Supp.2d at 1075. Rather, the dispute turns on whether Comcast's employee handbook can form the basis of an "agreement" within the IWPCA's broad view of that term.

As this court acknowledged in its previous ruling, in the IWPCA context "'an 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons.'" *Skelton*, 382 F. Supp.2d at 1075 (*quoting Landers-Scelfo*, 356 Ill. App. 3d at 1067-68). In this context an agreement need not include "the formalities and accompanying legal protections of a contract." *Id.* Here, the agreement Brand points to is Comcast's employee handbook, which includes the following disclaimer:

> [t]he individual provisions of the Employee Handbook are simply guidelines, and Comcast reserves sole discretion to interpret them and

9

> resolve any conflict between or among policies. Comcast also reserves the right to change, delete, suspend, discontinue, or otherwise revise the Employee Handbook, or any individual policy contained in it, at any time for any reason, with or without notice.

(R. 75, Defs.' Reply at 6.) The dominant view in this district is that this kind of disclaimer dissolves Brand's argument that the handbook can form the basis of an IWPCA claim. *See Camilotes*, 2012 WL 2905528, at *6; *Martino*, 2008 WL 4976213, at *9; *Skelton*, 382 F.Supp. 2d at 1075; *Paulitz*, 1991 WL 33658, at *3. That is because an agreement—even within the IWPCA's broad meaning—requires mutual assent, and by the disclaimer's express provisions, Comcast has not assented to adhere to the terms of its handbook. *See Skelton*, 382 F.Supp.2d at 1075. The handbook expressly states that its provisions are mere guidelines and gives Comcast sole discretion to change or delete any of the handbook's provisions for any reason and without any notification to the employee. It describes what an employee may be able to expect from Comcast, but explicitly says that Comcast may not adhere to those expectations, and indeed may renege on the framework for those expectations "at any time for any reason, with or without notice." (R. 75, Defs.' Reply at 6.) The fact that Comcast did not amend the handbook during Brand's employment does not supply the requisite assent, because in the IWPCA context an employee cannot use the employer's practice to create, rather than to explain, an agreement. *See Stark v. PPM America, Inc.*, 354 F.3d 666, 672 (7th Cir. 2004). Because the employee handbook at issue here does not bind Comcast in any way, this court will adhere to the majority view in this district that the express

10

disclaimer prevents the handbook from standing as the agreement required to state a claim under the IWPCA. *See Camilotes*, 2012 WL 2905528, at *6; *Martino*, 2008 WL 4976213, at *9; *Skelton*, 382 F.Supp.2d at 1075; *Paulitz*, 1991 WL 33658, at *3.

Second, even if the handbook's disclaimers do not destroy any otherwise existing mutual assent, the statements Brand points to in Comcast's handbook to support his argument do not represent its assent to do anything other than meet its obligations under existing state and federal law. Brand alleges that the handbook establishes that Comcast "agreed" to pay its employees overtime at a rate of one and one-half the regular rate for all hours worked over 40 hours during the workweek. (R. 74, Pl.'s Resp. at 5; R. 66, Second Am. Compl. ¶ 11.) Both the FLSA and the IMWL, however, already require this overtime pay rate when employees work over 40 hours per week.[1] *See* 29 U.S.C. § 207(a)(1) (requiring employers to pay their employees an overtime rate of at least one and one-half times the employee's regular wage for any hours worked in excess of 40 hours per week); 820 ILCS § 105/4a(1) (requiring that employees receive a wage of not less than one and one-half times their regular rate for all hours worked over 40 in a workweek). Such language cannot form the basis of a contract, because the performance of a pre-existing legal duty does not amount to consideration. *See Restatement (Second) of*

---

[1] During a motion hearing held on April 1, 2013, this court asked Brand's counsel what the IWPCA claim adds to this case, where the alleged agreement is based on Comcast's obligation to follow federal and state wage laws. Brand's counsel candidly answered that the IWPCA claim allows for a larger class because it has a significantly longer statute of limitations than either the FLSA or the IMWL.

11

*Contracts* § 73. It is also unclear how, in the IWPCA context at least, an employer's acknowledgement of its obligation to follow existing laws could form the basis of a separate "agreement" to follow those laws even where consideration is not a required element. Comcast is obligated to pay overtime at the rates described in the FLSA and IMWL whether or not it acknowledges that obligation orally or in its written materials.

This court is resistant to the argument that an employer's simple acknowledgment of its legal obligations establishes an actionable IWPCA agreement, in part because if that view is correct, then nearly every overtime wage claim will have an IWPCA component. That result runs counter to the idea that the IWPCA does not provide a substantive right to overtime pay. *See, e.g., Camilotes*, 2012 WL 2905528, at *4; *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 CV 8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012); *Smith*, 2012 WL 255806, at *1-*2. As a similar decision from this district recognized, "there is no indication . . . that the Illinois legislature or courts have considered the IWPCA an appropriate mechanism for enforcing the overtime wage laws." *Jaramillo v. Garda, Inc.*, No. 12 CV 662, 2012 WL 1378667, at *2 (N.D. Ill. Apr. 20, 2012); *see also Kim*, 368 Ill.App.3d at 306 (characterizing IWPCA's "primary objective" as ensuring that employees receive earned benefits upon departure from employment). Instead, "the proper avenue for seeking unpaid overtime when not covered by an agreement or contract is through the FLSA and IMWL, and not the IWPCA." *Palmer v. Great*

*Dane* Trailers, No. 05 CV 1410, 2005 WL 1528255, at *3 (N.D. Ill. June 28, 2005); *see also Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 869 (Ill. App. Ct. 2011) (declining to discuss IWPCA claim where "it is clear that plaintiff's claim for overtime is fundamentally premised upon" the IMWL). It is not sufficient for an IWPCA claimant to allude to a "policy" to pay overtime. *See Paulitz*, 1991 WL 33658, at *3. Instead, to survive dismissal the plaintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws. *See Palmer*, 2005 WL 1528255, at *4. Here, the handbook provisions Brand points to in the second amended complaint do nothing more than acknowledge to its workforce Comcast's preexisting duty to abide by the FLSA and IMWL.

In this court's view, the Illinois Department of Labor's ("IDOL") complaint forms reinforce the idea that the IMWL—not the IWPCA—covers routine overtime claims where there is no separate agreement to pay a particular wage. In *Jaramillo*, the court based its decision to dismiss an IWPCA claim in part on its reading of IDOL's interpretative regulations and claim forms. 2012 WL 1378667, at *3. The court noted that the interpretive regulations under the IWPCA "appear not to mention overtime claims at all." *Id.* It pointed out that IDOL's form for filing a wage claim under the IWPCA at the time instructed claimants with overtime claims to use the IMWL form. *Id.* After the *Jaramillo* decision was issued, IDOL began using a new form for IWPCA claims that allows claimants to use a single form,

13

regardless of whether the claim falls under the IWPCA or the IMWL. *See* Ill. Dep't of Labor, Wage Claim Application, http://www.illinois.gov/idol/Laws-Rules/FLS/Documents/IL452WC02.pdf (last visited April 11, 2013). But this change may simply represent an attempt to streamline the claim process by giving claimants one form to complete and allowing IDOL's staff to determine which statute provides the appropriate route to relief. Indeed, the instructions at the bottom of the first page of the new form state, "[i]f your claim is exclusively for minimum wage and overtime violations you may choose to remain anonymous by selecting the option on page 2 of the application. Your name will be revealed to your employer if you are claiming unpaid wages, vacation, bonuses, commissions or illegal deductions." *Id.* That statement suggests that IDOL still considers overtime claims to cover distinct and separate violations from IWPCA claims. Additionally, the first page of the new form includes a section for claiming unpaid wages with separate boxes for regular time, overtime, and minimum wage violations. *Id.* This section directs claimants to page 2, which contains a separate section only for claims of minimum wage or overtime violations. *Id.* The language and structure of the new form therefore supports the contention that IDOL continues to distinguish between claims for unpaid wages under the IWPCA and claims for minimum wage or overtime violations under the IMWL.

In concluding that Comcast's employee handbook does not support an IWPCA claim, this court is also persuaded by Comcast's contention that under the minority

view—which would allow even a handbook including an express disclaimer to form the agreement underlying an IWPCA claim—employers will be discouraged from making employees aware of their rights under state and federal laws, which, in turn, could subject employers to an enhanced risk of liquidated damages in an FLSA action. (R. 70, Defs.' Mem. at 10–11.) As Comcast explains:

> [e]mployers would have to choose between refraining from disseminating wage and hour policies to avoid potential IWPCA liability, but risking a finding that they did not promote an atmosphere of compliance with wage and hour law, or promulgating such materials to comply with FLSA obligations, yet exposing themselves to the risk of creating an "agreement" under the IWPCA, thereby subjecting themselves to that statute's significantly longer limitations period.

(Id. at 11.) Not only does the minority view leave employees in the double-bind Comcast describes, but it also would enable a plaintiff to survive a motion to dismiss on an IWPCA claim anytime an employer acknowledges its state or federal law overtime obligations in a company handbook. Given the significant rise in litigation costs that typically follows the denial of a motion to dismiss, the minority view could result in the tension Comcast predicts here, where training and other materials distributed to explain employees' preexisting legal rights could be used offensively against employers to create a new cause of action under the IWPCA. (*See* R. 70, Mem. at 10-11.)

Brand points to two Illinois appellate court decisions, *Landers-Scelfo*, 356 Ill.App.3d 1060, and *Zabinsky v. Gelber Group, Inc.*, 347 Ill.App.3d 243 (1st Dist. 2004), to support his argument that an "agreement" for purposes of an IWPCA

15

claim includes the kinds of allusions to pre-existing overtime obligations that are found in Comcast's handbook. Although it is true that in both cases the Illinois Appellate Court gave the concept of an "agreement" for IWPCA purposes a broad interpretation, neither decision did so in the context of an overtime claim. In *Landers-Scelfo*, an account executive alleged that her employer breached its agreement to pay her sales commissions in accordance with a particular formula. 356 Ill.App.3d at 1062-63. The court held that her allegations that the employer had paid her in accordance with that formula for almost a year was enough to allege that it had assented to the commission agreement. *Id.* at 1068. Similarly, in *Zabinsky* the plaintiff testified at trial that he had worked pursuant to an agreement that his employer would pay him a bonus based on a mutually agreed-upon formula. 347 Ill.App.3d at 248. Even though he had not described all of the elements for an enforceable contract, the court found that his description of the bonus agreement supported his IWPCA claim. *Id.* at 249. Thus both of these cases involve allegations of an agreement, supported by mutual assent, to do something other than abide by existing wage laws, and thus do not provide a great deal of guidance here.

For all of these reasons, to the extent Brand alleges that Comcast failed to pay its employees overtime at a rate of one and one-half the regular rate, the correct route to redress is through his FLSA and IMWL claims. *See Palmer*, 2005 WL 1528255 at *3-*4. As the second amended complaint currently stands, none of the

allegations describe the parameters of a separate agreement, supported by mutual assent, to pay Brand particular wages. *Cf. Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (noting that after *Twombly*, "the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence"). Because Brand has not sufficiently alleged that Comcast failed to comply with a separate agreement to pay wages, the IWPCA claim is dismissed without prejudice to Brand filing a third amended complaint.

## Conclusion

For the foregoing reasons, Comcast's motion to dismiss Brand's IWPCA claim is granted. Brand has until April 25, 2013, to file a third amended complaint. Should Brand choose to forego an amendment within the allotted time period, the dismissal of count II will be with prejudice as of April 26, 2013, without further order of the court.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**