**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES BRAND, CARLENA BOLDEN, BARRY FARMER, MARK GRAHAM, JAMES HUGHES, KEVIN JACKSON, MICHAEL JACKSON, JOSE VIGIL, AND CHRISTOPHER WOODARD ) ) ) ) ) ) | |
| ) | Case No. 12-cv-1122 |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC ) ) ) ) | (JURY TRIAL DEMANDED) |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT AS TO
<u>PLAINTIFF BARRY FARMER</u>**

## I. INTRODUCTION

Plaintiff Barry Farmer is a Comcast line technician who worked unsupervised in the field maintaining Comcast's outside cable network structure. He raises claims under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").[1] Specifically, he alleges that Comcast failed to pay him for a variety of pre- and post-shift activities, such as receiving and reviewing his assignments, checking his routes, securing his truck, and logging in to his laptop computer for certain periods of his employment.[2] He also alleges that he worked without pay during meal breaks. Finally, Farmer claims that Comcast failed to pay him for "on call" time when he was "highly restricted" and, therefore, entitled to compensation. All of Farmer's claims fail as a matter of law.

First, Farmer seeks compensation for time that is not compensable as a matter of law. Tasks such as receiving, mapping, and prioritizing jobs and routes for assignment, downloading assignments on a home computer, performing vehicle safety inspections, or carrying equipment are non-compensable under the Portal-to-Portal Act ("PPA") as amended by the Employee Commuting Flexibility Act ("ECFA"). *See* 29 C.F.R. § 254(a)(1)(2) (rendering non-compensable certain commuting, preliminary and postliminary tasks and those "incidental to the use" of an employer's vehicle for travel); *Espenscheid v. DirectSAT*, No. 09-625, 2011 WL 10069108, at *23 (W.D. Wis. Apr. 11, 2011) (neither traveling to and from work nor activities incidental to commuting are compensable under the FLSA). Likewise, Farmer is not entitled for

---

[1] Farmer initially "opted in" to the FLSA conditionally certified collective action. (Dkt. 23, 23-1.) On March 10, 2014, he was added as a named plaintiff to the Third Amended Complaint. (Dkt. 115, 119).
[2] *See also* Pls.' Third Am. Compl. (Dkt. 119), ¶ 12 ("Defendants encouraged Plaintiffs to perform work before the start and after the end of their scheduled shift, but did not record or pay them for such time worked. Specifically, time spent by Plaintiffs receiving and reviewing their assignments; checking their routes; loading and unloading their vehicles, completing their vehicle checklist; and performing work on their lap-top computers or handheld devices was not recorded or paid by Defendants.")

any compensation for time spent "on call," because he was paid for time he was on "standby" and he was not otherwise restricted from personal activity.

Second, even if Farmer's alleged off-the-clock activities were compensable, Comcast did not have actual or constructive knowledge of them. *See Blakes v. Illinois Bell Tel. Co.*, No. 11-cv-336, 2014 WL 6978813, at *12 (N.D. Ill. Dec. 10, 2014) ("[W]hile an employer cannot slyly sit back in order to reap extra work without pay, it has no obligation to pay for work it did not know about and had no reason to know about."). Although Farmer knew he was supposed to record all time worked -- and indeed had always been paid for overtime he did record -- Farmer elected not to report of any of the alleged work for which he now seeks compensation. Moreover, Farmer does not believe his supervisors knew he was working off-the-clock, as he never told them he was working off-the-clock and the alleged off-the-clock activities occurred either in Farmer's home or out in the field – *away* from Comcast supervisors.

Finally, Farmer's claim fails because he can establish neither the occurrence nor the frequency of any alleged off-the-clock work. In fact, he "couldn't begin to guess" how to estimate the alleged time he worked off-the-clock. (SOF ¶ 60). His "bare assertions" regarding off-the-clock work is not enough to create a genuine issue of material fact for trial. *See, e.g., Holaway v. Stratasys, Inc.*, No. 14-1146, 2014 WL 5755987, at *3 (8th Cir. Nov. 6, 2014); *Blakes v. Illinois Bell Tel. Co.*, No. 11-cv-336, 2014 WL 6978813, at *18 (N.D. Ill. Dec. 10, 2014) (summary judgment denied when the plaintiff had "done more than make purely speculative, bare, undocumented allegations").

For the foregoing reasons and those more fully discussed below, the Court should grant Comcast's motion and dismiss Farmer's claims in their entirety.

## II. SUMMARY OF KEY FACTS[3]

### A. Background On Farmer's Line Technician Position

Comcast employs line technicians to maintain its cable network infrastructure, which includes maintaining node health, repairing outages, testing signals and other system issues for the network plant. (SOF ¶ 6.) Pursuant to Comcast's Vehicle Use Policy, Farmer, like many other line technicians, elected to "Home Dispatch" for a certain period of his employment, meaning that he took his Comcast truck home and drove straight from home to and from work. (SOF ¶¶ 11, 14.) Farmer has also worked as a "Home Garage" technician, which means he travels from his home to the Comcast office in his Comcast truck and then to travels from the Comcast office to his starting point for the day. (SOF ¶¶ 11, 12.)

As a line technician, Farmer was typically scheduled for ten-hour days, four days a week, with a one-hour unpaid break in the middle of the day. (SOF ¶¶ 9, 54.) Approximately every five weeks, Farmer also rotated through an "on-call" shift that lasted seven days. (SOF ¶ 9.) While on-call, Farmer was able to watch TV, run errands, play cards, play video games, make home repairs, spend time with his kids, go to the grocery store, wash the car, drop off his kids and walk the dog. (SOF ¶ 80.)

### B. Comcast Policies and Guidelines for Timekeeping and Lunch Breaks

Comcast policy mandates employees report their time accurately and be paid for all time worked. Comcast's Employee Handbook provides:

> Each employee is responsible for checking the accuracy and completeness of his/her own timesheet…each employee agrees to record accurately all hours actually worked and further agrees not to misrepresent the hours worked either by overstating the actual hours or understating them. Employees must record, as time worked, any time performing services related to their duties or otherwise working

---

[3] Citations to Comcast's Rule 56.1 Statement of Undisputed Material Facts appear as ("SOF"__).

on behalf of the Company, even if such time is prior to the scheduled shift start or stop time.

(SOF ¶ 15.)

Likewise, Comcast's Time Reporting For Home Garaging or Home Dispatched Technicians policy provides that technicians "No work-related tasks may be performed prior to logging onto, or after logging off of…at the beginning or end of each day." (SOF ¶ 18.) If technicians perform any task outside of their regularly scheduled shift, they "must notify their supervisor and then properly record this work time on his or her timesheet." (SOF ¶ 18.)[4]

Comcast's online training reinforces these principles, reminding employees that they must "record the exact times you start your work day, leave for your meal break, return from your meal break and end your work day." (SOF ¶ 23.) Technicians also were trained to "include the following activities at the beginning of your work day as work time under Comcast policy: logging into the computer and other electronic devices provided by the Company, opening work applications, picking up work equipment, [and] performing safety checks." (SOF ¶ 24.) Finally, technicians were trained to "record the exact time that you stop working at the end of your day" and include "any time spent at the end of the work day: logging out of the computer and other electronic devices; closing work applications [and] unloading equipment." (SOF ¶ 26.) Comcast provides multiple avenues for technicians to raise complaints or concerns regarding pressure to work off the clock. (SOF ¶ 27.)

Farmer testified that he understood it was Comcast policy to pay him for all time he worked, including overtime. (SOF ¶ 31.) He also knew he was to accurately record all of his time. (SOF ¶¶ 29, 30) Farmer testified that every time he put overtime down, he was paid for

---

[4] Comcast's CommTech Expectations also provide: "[e]ach technician is required to keep accurate and complete time records each day he or she works by properly recording all work time. It is the CommTech's responsibility to avoid over-reporting or under-reporting of work time." (SOF ¶ 16.)

4

it. (SOF ¶ 31.) Farmer earned "quite a bit" of overtime over the years; in fact, he earned $28,078.39 in overtime pay and premium compensation, exclusive of any overtime earned as part of any call out pay, while working as a Line Technician from 2009 to 2014. (SOF ¶¶ 34, 35.)

### C.     Farmer's Allegations Regarding Off-the-Clock Work

#### 1.     Farmer's Alleged Pre-Shift Work

When he was a home dispatch technician, Farmer alleges that he had to perform a number of work-related activities before the start of shift. First, he claims that he was required to log on to Comcast databases to assign himself work and see where his first jobs were. (SOF ¶¶ 36-37, 40, 43.) Second, he claimed that he had to perform mandatory safety inspections on his truck. (SOF ¶ 45.) Third, he testified that he will also gas up his car before work and will "sometimes" take his vehicle for servicing before the start of his shift. (SOF ¶ 46.) Farmer admitted that no one told him that he had to perform these activities pre-shift. (SOF ¶ 41.) He never recorded any of these alleged pre-shift activities on his time sheets, even though "quite often" he would record and be paid overtime for times when he was called to go to a job before the start of his shift. (SOF ¶ 33, 42.)

#### 2.     Alleged Lunch Break Work

Farmer testified to working through lunch because of his workload. (SOF ¶ 55.) Every time Farmer recorded working through a lunch break as overtime, he was paid for it. (SOF ¶¶ 55-56.) When Farmer worked through lunch, he either did not tell management that he was on lunch break (and so his supervisor "would not have known" that Farmer was on break), or, if "on occasion" he did, he would finish the conversation and return to his lunch break. (SOF ¶¶ 61-64.) Farmer never complained to anyone about working through lunch and not getting paid for it. (SOF ¶ 65.) He also "couldn't begin to guess" the amount of time that he claims he worked

through lunch for which he is now asking to be paid. (SOF ¶¶ 60, 66.)

### 3. Alleged Post-Shift Work

Farmer testified that whether he recorded alleged post-shift time spent on activities such as securing his truck, closing programs and logging off his computer, and completing timesheets, depended on how long these activities took him. (SOF ¶¶ 70-73.) When he did record it, Farmer was paid for that time without issue. (SOF ¶¶ 71, 72, 74.) Farmer "couldn't begin to tell" how much time he worked post-shift that he did not put down as overtime. (SOF ¶ 75.)

## II. ARGUMENT

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the facts and all reasonable inferences drawn therefrom are viewed most favorably to Farmer, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), he must go outside the pleadings to present "significant probative evidence" to support his claims. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150,* 433 F.3d 1024, 1038 (7th Cir. 2006) (internal quotation omitted); *see also Jones v. City of Elkhart, Indiana,* 737 F.3d 1107, 1113 (7th Cir. 2013) (more than "some metaphysical doubt as to the material facts" is required) (quotations omitted). This burden is "not satisfied by unsubstantiated assertions, speculation, or the mere existence of 'a scintilla of evidence.'" *Blakes*, 2014 WL 6978813, at *14 (citations omitted).

### B. Farmer's FLSA and IMWL Claims Fail As A Matter Of Law.[5]

---

[5] Courts interpreting the IMWL have held that it "parallels the FLSA, and that the same analysis generally applies to both statutes." *Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778, 784 (N.D. Ill. 2011)(citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601, n. 3 (7th Cir. 1993)); *Morgan v. Speak Easy LLC*, 625 F. Supp. 2d 632,
(Footnote Continued)

1. **Farmer Seeks Compensation For Time That Is Not Compensable As A Matter Of law.**

    a. **The Portal-To-Portal Act Bars Farmer's Claims For Pre- And Post-Shift Activities Incidental To His Commute.**

The PPA provides that employers are not liable for failing to pay an employee overtime compensation for "riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "activities which are preliminary or postliminary to said principal activity or activities" that occur before commencing or after ceasing such principal activity or activities. 29 U.S.C. § 254(a)(1), (2). ECFA amended the PPA to add that "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are *incidental to the use of such vehicle for commuting* shall not be considered part of the employee's principal activities if the use of such vehicle for travel is (i) within the normal commuting area for the employer's business or establishment (ii) and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee." 29 U.S.C. § 254(a)(emphasis added); § 2102, Pub. L. 104-188, 110 Stat. 1755, 1928 (1996).

The conditions for ECFA applicability are met here; Farmer does not contend he had to travel beyond the "normal commuting area" and Farmer agreed to use a Comcast vehicle, as reflected in the Vehicle Use and Home Dispatching/Home Garage Policies. (SOF ¶ 14). The PPA, as amended and supplemented by ECFA, bars Farmer's claims for alleged pre- and post-shift work here.

   (i) **Reviewing, Planning, and Creating Job Assignments**

---

650 (N.D. Ill. 2007) (citations omitted). The FLSA regulations also are to be used as guidance in interpreting the IMWL (Ill. Admin. Code tit. 56, p. 210.120 (2009)) and courts have recognized that federal decisions interpreting the FLSA also apply to IMWL claims. *See In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08-C-5802, 2011 WL 248448, at *1-2 (N.D. Ill. 2011).

Farmer claims he should be paid for time spent logging into Comcast's assignment databases, Watchtower and Mercury, before his shift to review assignments or to create assignments for his day. (SOF ¶ 36.) Multiple courts, including in cases brought by cable technicians, have rejected similar claims. *See, e.g.*, *Butler v. DirectSAT*, No. DKC 10-2747, 2014 WL 5342729, at *9-10 (D. Md. Oct. 16, 2014) (time spent by plaintiff reading emails regarding appointments, mapping out directions and prioritizing routes is not compensable under the FLSA); *Donatti v. Charter Commc'ns, LLC*, 950 F.Supp.2d 1038, 1054 (W.D. Mo. 2013) ("While the technician must check his first assignment early enough to ensure he or she has allotted sufficient commute time for the morning to his first job site, this by its very nature is incidental to use by the technician of an employer-provided vehicle for commuting from the technician's home to his first job site at the beginning of his day."). As one court in this Circuit held:

> Receiving and mapping routes…are tasks inherently related to plaintiffs' commute and not related uniquely to the activities of installing and upgrading cable services. Every employee who must drive in order to reach his or her work site must perform the same tasks. Thus, these tasks are the type of commuting, preliminary and postliminary tasks Congress intended to be precluded by the Portal-to-Portal Act. 29 C.F.R. § 254(a)(1)(2) (neither "traveling to and from" work nor "activities…incidental to…commuting" are compensable under the FLSA).

*Espenscheid,* 2011 WL 10069108, at *23. *See also Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057-58 (9th Cir. 2010) (affirming summary judgment on time spent "receiving, mapping, and prioritizing jobs and routes for assignment," including time spent logging onto computer device, because they were related to his commute and not "integral" to his principal activities, and in any event appeared to be *de minimis*); *Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400, 413 (5th Cir. 2011) (time spent by service technicians logging in and downloading assignments at home to learn their first assignments was incidental to technicians' commute); *Colella v. City of*

8

*New York*, 986 F.Supp.2d 320 (S.D.N.Y. 2013) (time spent by employees speaking with supervisors about scheduling matters while commuting between homes and work locations was incidental, preliminary, or postliminary to exempt commute time).

### (ii) Performing Vehicle Maintenance, Fueling Truck, and Securing Truck

Likewise, "vehicle maintenance is a task inherently related to plaintiffs' commute and not related uniquely to the activities of installing and upgrading cable services. Every employee who must drive in order to reach his or her work site must perform the same tasks." *Espenscheid*, 2011 WL 10069108, at *23. *See also Chambers*, 28 F.App'x at 420, n. 55 ("[R]efueling the service van, performing vehicle safety inspections, and tidying up the van…are [activities] clearly incidental to the commute under the [Portal-to-Portal Act] and thus non-compensable[.]"); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 916 (D. Minn. 2010) ("Cleaning, maintenance, fueling of Plaintiffs' vehicles before leaving for an investigation do not constitute principal activities or activities integral to principal activities that started the work day[.]"); *Buzek v. Pepsi Bottling Group, Inc.*, 501 F. Supp. 2d 876, 882 (S.D. Tex. 2007) (ECFA legislative history indicates that "routine vehicle safety inspections . . . have long been considered preliminary or postliminary activities and are therefore not compensable." ) (quoting H.R. Rep. No. 104-585 at 5 (1996)).[5]

### b. Farmer Cannot Recover For Time He Was "On Call" Because He Was Not "Highly Restricted" While On Call.

---

[5] *See also Singh v. City of New York*, 524 F.3d 361, 371 (2d Cir. 2008) ("the mere carrying of inspection documents without any other active employment-related responsibilities while commuting is not work under the FLSA, except to the extent that it increases the duration of the commute" and noting that "any increase in commuting time in this case is *de minimis* as a matter of law and thus not compensable under the FLSA") (Sotomayor, J.)

9

Farmer's "on call" claim also fails as a matter of law. Though Farmer claims he is due compensation for time spent "on call" because he "[was] highly restricted while on-call and, therefore, entitled to compensation," (Dkt. 119, ¶ 12), Farmer in fact was able to watch TV, run errands, play cards, play video games, make home repairs, spend time with his kids, go to the grocery store, wash his car, drop off his kids and walk the dog. (SOF ¶ 80.) These facts foreclose his on-call claim. *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.*, 164 F.3d 1056, 1057 (7th Cir. 1999) (affirming summary judgment for employer when on-call restrictions included being near a car, appearing at the hospital within seven minutes); *Jonites v. Exelon Corp.*, 533 F.3d 721, 724 (7th Cir. 2008) (Where employees only needed to be available for call outs, they were not "working" while on call and were not entitled to off duty pay under the FLSA.)

### 2. There Is No Genuine Dispute That Comcast Lacked Knowledge Of Farmer's Alleged Off-The-Clock Work.

Even if the activities for which Farmer now seeks compensation were compensable, Farmer still "must show" that his employer – Comcast – "had actual or constructive knowledge of [the] overtime work." *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173, 177 (7th Cir. 2011); *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014); *see also* 29 U.S.C. §203(g), 29 C.F.R. §785.11. "When [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012). Consequently, "where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA." *Schremp v. Langlade County*, No. 11-590, 2012 WL 3113177, at *2 (E.D. Wis. July 31, 2012); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.

10

1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of s [sic] 207(a).").

Here, Comcast has robust policies that require nonexempt employees to record their time accurately and specifically include any time spent working before or after their shifts or during their meal period. (SOF ¶¶ 15-18, 20-27.) Farmer understood Comcast's policies required him to accurately report all hours worked, even if outside of his shift. (SOF ¶¶ 28-30.) Moreover, Farmer offers no evidence that his supervisors instructed him to work off the clock, that anyone manipulated his time records to cheat him out of pay or any other evidence to genuinely dispute that he would not have been paid for the alleged off-the-clock work had he elected to record it. To the contrary, he often recorded and was paid for many of the activities for which he now seeks compensation – pre-shift work, lunch break work, and post-shift work. (SOF ¶¶ 33, 55-56, 71-74.) Thus, Farmer was paid "quite a bit" of overtime – over $28,882.80 during the limitations period. (SOF ¶¶ 34-35.) Farmer's conscious choice to disregard policy because he thought Comcast technology was "glitchy" or because he wanted to find out where he needed to be by his start time (SOF ¶ 38) does not create an issue for trial. *See Kellar*, 664 F.3d at 178 (affirming summary judgment for employer in case where plaintiff "would simply write in her time card that she arrived at the beginning of her scheduled work shift" whenever she forgot to punch in).[6]

---

[6] At most, Farmer claims that there was one time when there was a meeting at Comcast where the technicians asked regarding "what the training course told us to do, which was start your log time there [when you log in before 7:30 a.m.]'" (SOF ¶ 53.) Farmer believes that then-manager Mark Espinosa stated, "I would recommend that you not do that," which Farmer interpreted as meaning he should not record pre-shift time. (SOF ¶ 54.) This ambiguous statement, if anything, suggests that Espinosa was advising technicians *not* to turn on their computers pre-shift, falls far short of creating a genuine issue of fact as to whether Comcast discouraged employees from recording their time.

11

Thus, what happened here was not a "failure by [the employer]" to keep accurate records or properly pay overtime, but "a failure by [the employees] to comply with [the employer's] timekeeping system." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012). As one court recently explained in granting summary judgment on another set of cable technicians' off-the-clock claims:

> [I]t is undisputed that defendants' existing system could capture all work time, so long as employees accurately reported all the time they worked. It would be improper to hold defendants liable for plaintiffs' voluntary failure to comply with reasonable timekeeping procedures, particularly when there is no evidence that defendants discouraged plaintiffs from complying with the system or had any reason to believe plaintiffs would not comply with it.

*Boelk v. AT&T Teleholdings, Inc.*, No. 12-40, 2013 WL 3777251, at *7 (W.D. Wis. July 19, 2013). The same is true here.

Even apart from his failure to report his time, Farmer cannot create a genuine issue of material fact sufficient to charge Comcast with knowledge of his alleged uncompensated work. Farmer spent his day largely unsupervised in the field maintaining Comcast's outside plant. As he testified, "our position is self-supervising." (SOF ¶ 48). Furthermore, Farmer did not complain to management about any alleged off-the-clock work. (SOF ¶¶ 48, 66). Farmer also admitted that Comcast could not have known if he was working during his lunch breaks. (SOF ¶¶ 32, 62). Thus, Comcast admittedly would have no way of knowing that he worked time he did not record in ESS. (SOF ¶ 32.) S*ee, e.g.*, *Blakes*, 2014 WL 6978813, at *21 (noting plaintiff admittedly never told his supervisors he worked through lunch).

On the basis of this evidence, no reasonable jury could conclude that Defendant had any knowledge of Farmer's alleged overtime work. *Boelk*, 2013 WL 3777251, at *7 (granting summary judgment where plaintiffs had not alleged that they told any of their supervisors or managers they were working during their lunches without reporting it); *Gaines*, 742 F.3d at 270-

12

1 (affirming summary judgment on FLSA claim where employer could not have known or should not have known employee was starting work early based on the "simple fact" that supervisors may have seen employee come to work early and noting that employee testified that he had never informed supervisors of unauthorized overtime); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (affirming judgment for employer in case in which the plaintiff testified in his deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint"). Indeed, the Seventh Circuit and other courts have held an employer lacked knowledge of off-the-clock work in circumstances far more suggestive of constructive knowledge than exist here. *See, e.g.*, *Blakes*, 2014 WL 6978813, at *14 (citing *Gaines* and *Kellar* noting the Seventh Circuit affirmed summary judgment based on lack of knowledge "even though the plaintiffs presented time records indicating they arrived early to work"); *Schremp*, 2012 WL 3113177, at *4 (fact that supervisors saw plaintiff working outside of regular hours did not establish that supervisors "knew that he was not being compensated for such time"); *see also Darrikhuma v. Southland Corp.*, 975 F. Supp. 778, 783-4 (D. Md. 1997), *aff'd*, 129 F.3d 1258 (4th Cir. 1997) (although supervisors saw employee working on weekends, they did not know employee was working off the clock).

Finally, Farmer's admits he was paid for all overtime he did charge – including overtime for pre-shift work, work during his lunch breaks, and post-shift work. (SOF ¶ 33, 56-57, 72-75). See *Blakes*, 2014 WL 6978813, at *21, *citing White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007) ("'Imputing constructive knowledge would be particularly inappropriate'" when evidence shows employees were paid for the overtime they reported); *Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1326 (S.D. Fla. 1999) ("It is . . . unclear why [an employee]

13

would follow appropriate procedures for reimbursement for some overtime assignments, but not others.").

### 3. Farmer's Speculation About The Amount Of Off-The-Clock Work Is Insufficient To Defeat Summary Judgment.

Even if Farmer's claims were actionable, he still must prove he performed overtime work for which he was not properly compensated. *See Kellar*, 664 F. 3d at 173, 177; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946), *superceded on other grounds by statute*.[8] The "mere averment of hours worked" is insufficient. *See Schremp,* 2012 WL 3113177, at *3. As one court in this District explained, "[i]f Plaintiff himself cannot recall even a single instance in which he was required to perform…work during his lunch break, no reasonable jury could find that such instances occurred." *Wilson v. City of Chicago*, No. 02-3379, 2004 WL 2095675, at *7 (N.D. Ill. Sept. 20, 2004); *Holaway*, 2014 WL 5755987, at *3 (affirming summary judgment for employer where employee provided only "vague testimony" regarding hours worked that did not constitute sufficient evidence to show amount or extent of overtime).[9]

Here, Farmer has nothing more than estimates on the range of time he allegedly worked

---

[8] As this court recognized in *Blakes*, "[Comcast]'s compliance with the FLSA's standard for keeping accurate records determines the burden of proof [Farmer] must bear in establishing the number of overtime hours [he] worked." *Blakes*, 2014 WL 6978813, at *11. Because Comcast's records are adequate under the FLSA's standards – Farmer does not allege Defendant told him to inaccurately report his time – the *Anderson* "just and reasonable inference" standard for showing the amount and extent of unpaid work should not apply. *Id.*; *Anderson*, 328 U.S. at 686; *Brown v. Family Dollar Stores of Ind. LP*, 534 F.3d 593, 595 (7th Cir. 2008) (the *Anderson* burden-shifting framework applies "where the employer's records [do] not provide [an] accurate record of time worked."); *Schremp*, 2012 WL 3113177, at *3 ("Where an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain or speculative damages is appropriate."). Regardless, Farmer cannot meet even the lower standard.

[9] *See also Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (plaintiff's assertion she worked 210 hours of unpaid overtime, without more, is insufficient to establish her FLSA action); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 521 (E.D. Tex. 2005) (holding that plaintiff, who could not quantify the amount of time he worked and conceded he did not follow the employer's procedure to receive overtime, did not provide "definite and certain" evidence he performed uncompensated work).

pre-shift and post-shift – and in fact has "no idea" and "couldn't begin to tell" how much pay he is claiming. (SOF ¶ 50, 76) Likewise, he "was not sure" of the amount of time he allegedly worked during lunch breaks. (SOF ¶ 67.) Farmer's failure to "provide some explanation for how he arrived at his estimate" falls short of his burden. *Blakes*, 2014 WL 6978813, at *22; *Holaway,* 2014 WL 5755987, at *3 (mere averment regarding hours worked "provides no details which would allow a jury to determine [the employee] worked beyond forty hours in any specific week of his employment"); *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 729 F. Supp. 2d 1038, 1064-65 (S.D. Iowa 2010) ("Plaintiffs' vague and generalized assertions of frequent interruptions lend little to the analysis of whether their time was spent predominantly for [defendant's] benefit rather than for their own."); *Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 700 (N.D. Ill. 2012) (granting summary judgment where plaintiffs provided no foundational testimony or other evidence of how estimates of overtime wages were supposedly due).[10]

## III. CONCLUSION

For the reasons set forth above, the Court should grant Comcast's Motion and enter summary judgment for Defendant on Plaintiff Barry Farmer's claims.

Respectfully submitted,

By: /s/ *Rita Srivastava*

---

[10] *See also Millington v. Morrow Cnty. Bd. of Comm'rs*, No. 06-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) ("Plaintiff's bare allegation that he worked an average of five hours every week at home insufficient to meet his burden of proof [sufficient to withstand summary judgment]."); *Daniels v. Finish Line, Inc.*, No. 07-1501, 2008 WL 4814008, at *3 (E.D. Cal. Oct. 31, 2008) (failure to submit any evidence beyond bare allegations and vague undocumented estimates to support claim insufficient to survive summary judgment) (quotations and citations omitted); *Kolesnikow v. Hudson Valley Hosp. Ctr*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. May 20, 2009) (plaintiff had not offered the "concrete particulars" or credible testimony approximating the number of hours worked without pay sufficient to withstand summary judgment).

                                                Sari M. Alamuddin
                                                Gregory P. Abrams
Rita Srivastava
Allison N. Powers
Alexandra Tuffuor
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
312.324.1000
salamuddin@morganlewis.com
gabrams@morganlewis.com
rsrivastava@morganlewis.com
apowers@morganlewis.com
atuffuor@morganlewis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on the following counsel of record of December 19, 2014 via the Court's ECF System:

> Ryan F. Stephan
> James B. Zouras
> Andrew C. Ficzko
> Teresa M. Becvar
> Stephan Zouras, LLP
> 205 N. Michigan Avenue, Suite 2560
> Chicago, Illinois 60601
> 312-233-1550
> 312-233-1560 f
> www.stephanzouras.com
>
> Noelle C. Brennan
> Leah M. Farmer
> Brennan & Brown, LTD
> 20 South Clark Street, Suite 1530
> Chicago, Illinois 60603
> 312-422-0001
> 312-422-0008 f
> www.brennan-brown.com

/s/ *Rita Srivastava*_____