# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is made by and between James Brand, Barry Farmer, Mark Graham, Kevin Jackson, Michael Jackson, Jose Vigil, and Christopher Woodard ("Plaintiffs"); and Comcast Cable Communications Management, LLC, for itself and on behalf of its parents, subsidiaries, and corporate affiliates ("Defendants" or "Comcast"). Plaintiffs and Defendants are referred to collectively as the "Parties."

1. **The Lawsuit.** On February 16, 2012, Plaintiffs filed a lawsuit against Defendants in the United States District Court for the Northern District of Illinois, entitled *James Brand, et al. v. Comcast Corporation, et al.*, Case No. 12-C-1122 (the "Lawsuit").

2. **Recitals.** In the Lawsuit, Plaintiffs made certain allegations concerning Comcast's alleged failure to pay them for hours worked in purported violation of the FLSA, IMWL and IWPCA. Comcast has denied, and continues to deny, all of the claims asserted in the Lawsuit, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Lawsuit and by Plaintiffs, and makes no concession or admission of wrongdoing or liability of any kind whatsoever. The Parties and their counsel have considered that under the circumstances and in light of the costs, distractions to Comcast's business, and risks of litigation, their respective interests are best served by compromise, settlement and dismissal of the Lawsuit with prejudice and have concluded that the terms of this Agreement are fair, reasonable and adequate. The Parties participated in arm's length settlement discussions and mediation supervised by Michael E. Dickstein of Dickstein Dispute Resolution/MEDiate, and as a result of these settlement discussions and mediation, have agreed to settle the issues, matters and things in dispute between and among them pursuant to the terms of this Agreement. The Parties, through their counsel, will seek judicial approval of this Agreement.

3. **Payment of Money.** As consideration for the promises and releases in this Agreement, Defendants agree to pay Plaintiffs the gross amount of **Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00)** (the "Gross Settlement Payment"), as follows:

> **A. Payment 1 – Plaintiffs' Payments – Two Hundred Thousand and 00/100 Dollars ($200,000.00)**

No later than thirty (30) calendar days after the Court approves this Agreement, and upon receipt of an executed Form W-9 for each Plaintiff, Defendants agree to pay Plaintiffs the gross sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00), allocated and distributed as follows:

DB1/ 88121483.1

(1) **Twenty-Three Thousand Three Hundred Thirty-Seven and 50/100 Dollars ($23,337.50)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to James Brand and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $11,668.75, is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $11,668.75, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(2) **Thirty-Six Thousand Six Hundred Twenty-Four and 82/100 Dollars ($36,624.82)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Barry Farmer and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $18,312.41, is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $18,312.41, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(3) **Ten Thousand Fifty-Nine and 81/100 Dollars ($10,059.81)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Mark Graham and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $5,029.91, is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $5,029.90, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(4) **Forty-Three Thousand Five Hundred Forty-Nine and 41/100 Dollars ($43,549.41)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Kevin Jackson and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $21,774.71, is for claimed lost

DocuSign Envelope ID: 6BBD3625-90FF-4922-9A81-923944E568D1

wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $21,774.70, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(5) **Thirty-Three Thousand Five Hundred Fifty-Seven and 37/100 Dollars ($33,557.37)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Michael Jackson and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $16,778.69 is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $16,778.68, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(6) **Forty-Three Thousand Seven Hundred Forty-Four and 12/100 Dollars ($43,744.12)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Jose Vigil and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $21,872.06, is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $21,872.06, is for claimed penalties, liquidated damages, interest, and all other non-wage income and will be reported to the Internal Revenue Service on a Form 1099.

(7) **Nine Thousand One Hundred Twenty-Six and 97/100 Dollars ($9,126.97)**, minus applicable taxes and withholdings required by law, via a check or checks as set forth below made payable to Christopher Woodard and delivered to Noelle Brennan & Associates, Ltd. Of this amount, fifty percent (50%), or $4,563.49, is for claimed lost wages and will be treated by the Parties as wages for tax purposes, and shall be subject to required withholdings and deductions so the net amounts payable will be less than the gross amounts, and reported to the Internal Revenue Service on a Form W-2. The remaining fifty percent (50%), or $4,563.48, is for claimed penalties, liquidated damages, interest, and all other non-wage

income and will be reported to the Internal Revenue Service on a Form 1099.

B. **Payment 2 – Attorneys' Fees and Costs – Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00)**

No later than thirty (30) calendar days after the Court approves this Agreement, and upon receipt of an executed Form W-9 for each business, Defendants agree to pay Plaintiffs' attorneys of record ("Plaintiffs' Counsel") the gross sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), allocated and distributed as follows:

(1) **One Hundred Twenty-Three Thousand Seven Hundred Sixty-Six and 41/100 Dollars ($123,766.41)**, via a check made payable and delivered to Noelle Brennan & Associates, Ltd. This amount is for attorneys' fees and costs and will be reported to the Internal Revenue Service on a Form 1099.

(2) **One Hundred Twenty-Six Thousand Two Hundred Thirty-Three and 59/100 Dollars ($126,233.59)**, via a check made payable and delivered to Stephan Zouras LLP. This amount is for attorneys' fees and costs and will be reported to the Internal Revenue Service on a Form 1099.

To the extent the Court disallows, disapproves, or reduces the award of attorneys' fees and costs as currently allocated to Plaintiffs' Counsel, the settlement will proceed, and this Agreement will be modified to reflect the amount of attorneys' fees and costs approved by the Court. Any amounts allocated as attorneys' fees and costs under this Agreement but not approved by the Court shall be allocated to the Plaintiffs' Payments, in which case new Plaintiffs' Payments will be calculated.

4. **Tax Liabilities.** Defendants agree that they are solely responsible for payment of the employer's share of all payroll taxes on that portion of the Gross Settlement Payment being treated as wages (as set forth in paragraphs 3(A)((1)-(7)) above) and reported on a Form W-2. Defendants also bear sole responsibility for remitting to the appropriate tax authorities all taxes withheld from the payments to Plaintiffs. For their part, Plaintiffs bear sole responsibility for the payment of all federal, state and local taxes, of any type whatsoever, resulting from their receipt of the payments provided for above. As to the Plaintiffs' Payments reported as non-wage income, the Plaintiffs agree to indemnify and hold Comcast harmless for any taxes due or owing by the Plaintiffs on such payments. Any amounts paid to the Plaintiffs shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit

plan provided by any of the Released Parties (as that term is defined in Paragraph 6).

5.   **Approval Order and Dismissal With Prejudice.** The Parties agree to work to effectuate approval and dismissal of the Action with the Court. To that end, promptly upon execution of this Agreement, Plaintiffs' Counsel will prepare a Joint Motion for Approval of FLSA Settlement and will provide it to Comcast's counsel for review, comment, or revisions ten (10) business days in advance of applicable deadlines (but not later than June 13, 2016) for filing. The Joint Motion shall seek the entry of an Order approving the terms of this Agreement, including of the Plaintiffs' Released Claims and approving the payment of attorneys' fees and costs. The Parties agree to cooperate with one another and execute any additional documents which may be necessary to secure dismissal of the Lawsuit with prejudice, each party to bear its own costs and attorney's fees except as otherwise stated in this Agreement. In the event this Agreement is not approved by the Court, this Agreement will no longer have any effect and the Parties will revert to litigating the Lawsuit as of the date and time immediately prior to the execution of this Agreement. Plaintiffs and Plaintiffs' Counsel may not cite this Agreement in the Lawsuit or any other action or proceeding.

6.   **Plaintiffs' Released Claims.** In exchange for the payments and benefits described herein, Plaintiffs release and discharge Comcast and its current, former, and future corporate affiliates and related entities including, without limitation, parents, subsidiaries, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, benefit plans, plan administrators, shareholders, attorneys, and personal or legal representatives ("Released Parties") from all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Plaintiffs ever had, now have, or may have against any of the Released Parties by reason of any act, omission, transaction, practice, plan, policy, procedure, conduct, occurrence, or other matter, up to and including the date the Court approves this Agreement, related to the payment of wages, commissions, shift differentials, bonuses, and/or other compensation that were or could have been asserted in the Litigation, including those claims that could arise under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq.*, the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq.*, or any other state or local wage/hour and wage payment statute/ordinance for any type of relief, including without limitation, minimum wages, overtime or other wages; unpaid wages or other compensation, costs; wage deductions; premium pay; liquidated damages, penalties; punitive damages; interest; attorneys' fees and; litigation costs; restitution; and equitable relief. In waiving and releasing the claims set forth in this Agreement, whether or not now known to Plaintiffs, Plaintiffs understand that this means that, if Plaintiffs later discover facts

different from or in addition to those facts currently known or believed to be true by Plaintiffs, the waivers and releases of this Agreement will remain effective in all respects – despite such different or additional facts and even if Plaintiffs would not have agreed to release the claims if Plaintiffs had prior knowledge of such facts.

7. **Limitations on Releases.** The releases in this Agreement expressly exclude claims that cannot be released by law and claims to vested benefits, workers' compensation, or unemployment benefits.

8. **No Admission of Liability.** Comcast has denied and continues to deny, specifically and generally, the claims asserted in the Lawsuit, any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Lawsuit. Comcast maintains that Plaintiffs and all other individuals who provided services to Comcast as Line Technicians were properly and fully compensated for all of the time they worked for Comcast. Pursuant to Federal Rule of Evidence 408, and any other analogous rules of evidence that are applicable, neither the settlement memorialized in this Agreement, nor any act performed or document executed pursuant to, or in furtherance of, the settlement memorialized in this Agreement: (a) is or may be deemed to be or may be used as an admission or evidence of, the validity of any claims released in this Agreement, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission or evidence of, any fault or omission of the Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

9. **Plaintiffs' Counsel's Acknowledgment**. Plaintiffs' Counsel represent that other than the Plaintiffs, Plaintiffs' Counsel does not have any other current clients who have wage and hour claims against any of the Released Parties in connection with their work for Comcast as Line Technicians. Additionally, Plaintiffs' Counsel are not aware of any individuals who work or worked for Comcast contemplating wage and hour claims against any of the Released Parties.

10. **Confidentiality.** Plaintiffs' Counsel will not directly or indirectly reference this Agreement (including its terms, negotiations, and amounts of payments) or this litigation on any website, through any form of social media, in any press release, or in any media outlet or to any member of the media. If the media inquires about this litigation or the settlement, the response will be limited to "the matter has been resolved." Plaintiffs will strictly maintain the confidentiality of the fact and terms of the settlement and will not discuss the settlement with the press, on any website, social media, or any other media outlet or generally with any member of the public. Notwithstanding the foregoing, Plaintiffs and Plaintiffs' Counsel may disclose information concerning this Agreement to their respective immediate family members, counsel, and tax advisors who have first agreed to keep said information confidential and not to disclose it to others. Notwithstanding the foregoing, Plaintiffs and Plaintiffs' Counsel are not prohibited or restricted from

DB1/ 88121483.1

disclosures that are required by law or as may be necessary to enforce the Agreement. To the extent any such disclosures are required, and to the extent permitted by law, Plaintiffs and Plaintiffs' Counsel shall provide Comcast with as much notice as possible of any request to make any above-described disclosure, and will use best efforts to ensure any such disclosure will occur in a manner designed to maintain confidentiality of this Agreement to the fullest extent possible.

11. **Consequences for Breach of Confidentiality Obligations**. Plaintiffs recognize and agree that the representations, promises, and covenants set forth in Paragraph 10 relating to their confidentiality obligations constitute a material and significant part of the consideration received from the Released Parties in exchange for their obligations under this Agreement, and that any violation of Paragraph 10 will constitute a material violation of this Agreement. Plaintiffs agree that they will each be liable for liquidated damages in the amount of twenty-five percent (25%) of their individual Plaintiff Payment if they violate this confidentiality obligation. Further, if Plaintiffs or Plaintiffs' Counsel violate this confidentiality provision prior to the Court's approval of the settlement, Comcast may rescind the settlement, rendering it null and void, and will no longer be bound by any of its terms. If settlement is not approved or Comcast withdraws from the settlement due to a violation of the confidentiality provisions, this Agreement will become null and void except for the terms of Paragraph 10.

12. **Choice of Law**. The Agreement will be construed and governed by the laws of the State of Illinois without reference to conflict of law rules.

13. **The Court's Retention of Jurisdiction**. Following its approval of the Agreement, the Court will retain jurisdiction to enforce Paragraph 10 and other terms of the Parties' settlement.

14. **Modification.** This Agreement and its attachments may not be changed, altered, or modified, except in a writing signed by Comcast and Plaintiffs' Counsel on behalf of themselves and Plaintiffs.

15. **Entire Agreement and Severability**. This Agreement constitutes the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other document related to the Parties' settlement of the Litigation, the Parties intend that this Agreement shall be controlling.

16. **Defendants' Authority to Enter Into Agreement**. The individual signing this Agreement on behalf of Comcast represents and warrants that he/she is duly authorized to execute this Agreement on behalf of and to bind each entity.

DB1/ 88121483.1

**17.** <u>Signatures</u>. Signatures via facsimile or scanned electronically will be treated as originals. Signatures will not require a notary. This agreement may be signed in counterparts.

###

## ACKNOWLEDGEMENT

I HAVE CAREFULLY READ ALL OF THE PROVISIONS OF THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS AND UNDERSTAND THAT IT RELATES TO MY LEGAL RIGHTS. I HAVE BEEN GIVEN AN ADEQUATE OPPORTUNITY TO CONSULT WITH AN ATTORNEY AND TO REVIEW THE AGREEMENT. I ACKNOWLEDGE THAT:

a. NEITHER COMCAST NOR ITS REPRESENTATIVES MADE ANY REPRESENTATIONS CONCERNING THE TERMS OR EFFECT OF THIS AGREEMENT OR RELEASE OTHER THAN AS SET FORTH IN THIS DOCUMENT;

b. THIS AGREEMENT WAS MUTUALLY NEGOTIATED AND NO PROVISION OF THIS AGREEMENT WILL BE CONSTRUED AGAINST OR INTERPRETED TO THE DISADVANTAGE OF COMCAST BY REASON OF COMCAST HAVING DRAFTED OR STRUCTURED ANY PROVISION;

c. I HAVE VOLUNTARILY SIGNED THIS AGREEMENT AS MY OWN FREE ACT WITH FULL KNOWLEDGE OF ITS TERMS AND CONDITIONS, WHICH ARE FINAL AND BINDING UPON ME.

d. IN SIGNING THIS AGREEMENT, I HAVE NOT RELIED UPON ANY REPRESENTATION, PROMISE OR STATEMENT, WRITTEN OR ORAL, NOT SET FORTH IN THIS DOCUMENT.

###

I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:

**JAMES BRAND**

By: _James Brand_ (DocuSigned by: 3D56F94A64534B1...)

Date: 6/15/2016

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____

Date: _____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

10

I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____*Barry Farmer*_____
 DocuSigned by:
 B3CF5E110E52470...

Date: _____6/15/2016_____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____



Date: _____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

10

**I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:**

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____*Mark G*_____
       1D832CF386FF49B...

Date: _____6/17/2016_____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____

Date: _____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

10

**I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:**

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____ *Kevin Jackson* (DocuSigned by: 7BD35CD2E2C7440...)

Date: _____ 6/15/2016

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____

Date: _____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

10

**I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:**

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____*[DocuSigned by: /s/ signature — A545D6A3287947B...]*_____

Date: _____6/15/2016_____

**JOSE VIGIL**

By: _____

Date: _____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

10

**I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:**

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____*Jose Vigil*_____
           DocuSigned by:
           F52DDF7C5FE04A2...

Date: _____6/15/2016_____

**CHRISTOPHER WOODARD**

By: _____

Date: _____

DB1/ 88121483.1

**I HEREBY AGREE TO THE TERMS SET FORTH ABOVE:**

**JAMES BRAND**

By: _____

Date: _____

**BARRY FARMER:**

By: _____

Date: _____

**MARK GRAHAM**

By: _____

Date: _____

**KEVIN JACKSON**

By: _____

Date: _____

**MICHAEL JACKSON**

By: _____

Date: _____

**JOSE VIGIL**

By: _____



Date: _____

**CHRISTOPHER WOODARD**

By: _*/s/ Christopher Woodard*_
    —9F843EDF910D4FD...

Date: __6/16/2016_____

DB1/ 88121483.1

10

FOR COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC:

By: _____

Title: *UP Finance*

Date: 6/16/16


APPROVED BY COUNSEL:

Dated: June ___, 2016    STEPHAN ZOURAS, LLP

By: _____
 Ryan Stephan
 205 N. Michigan Ave., Suite 2560
 Chicago, IL 60601
 RStephan@stephanzouras.com

 *Counsel for Plaintiffs*

Dated: June 20, 2016    MORGAN, LEWIS & BOCKIUS LLP

By: _____
 Sari Alamuddin
 77 West Wacker Drive
 Chicago, IL 60601
 ~~salamuddin@morganlewis.com~~
 sari.alamuddin@morganlewis.com

 *Counsel for Comcast*

**FOR COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC:**

By: _____

Title: _____

Date: _____


APPROVED BY COUNSEL:

Dated: June 20, 2016      STEPHAN ZOURAS, LLP

By: _____
Ryan Stephan
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601
RStephan@stephanzouras.com

*Counsel for Plaintiffs*

Dated: June __, 2016      MORGAN, LEWIS & BOCKIUS LLP

By: _____
Sari Alamuddin
77 West Wacker Drive
Chicago, IL 60601
salamuddin@morganlewis.com

*Counsel for Comcast*